## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Angelica K. Carpenter, being duly sworn, depose and state that:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since September 2015. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code (U.S.C.), Section 2510(7) that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code Section 2516.

2.      I received my formal training at the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia, completing both the Criminal Investigator Training Program and Special Agent Basic Training. During these two academies at FLETC, I received specialized training in several law enforcement criteria, including but not limited to the following: writing of legal documents such as court orders, warrants, etc., the handling of evidence, search procedures, as well as violations of the United States Code relating to firearms, explosives, arson, and alcohol and tobacco diversion.

3.      As an ATF Special Agent, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Titles 18, 21, and 26 of the U.S.C. I have personally participated in and conducted criminal investigations pertaining to the illegal acquisition of firearms, possession of firearms by prohibited persons, smuggling of firearms, and investigations involving narcotics. As such, the result of many of these investigations have led to arrests, searches, and seizures of individuals and property involved in violations of Federal laws.

4.      The information contained in this Affidavit is based upon my review of the reports and files in the case, conversations with other law enforcement personnel, and my own personal knowledge.  Because this affidavit is for the limited purpose of setting forth probable cause for a criminal complaint and arrest warrant, I have not necessarily included every fact known to me through this investigation.  I have set forth those facts I deem necessary to establish probable cause to believe that the above-mentioned violation(s) have been committed by **Jacob Michael RICHARDSON** (White, Male, DOB: 12/17/1987, SSN 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) and **Brian Michael FRENCH** (Native American, Male, DOB: 09/10/1990, SSN 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).

### Probable Cause Statement

5.      On or about August 10, 2020, ATF agents developed information during the course of an investigation that **RICHARDSON** and **FRENCH** as operating out of a residence, located at 406 North Oakley, Kansas City, Jackson County, Missouri, where firearms and illegal controlled substances were present and available for sale.

6.      A records check of **RICHARDSON**'s criminal history revealed the following felony convictions: a 2015 felony conviction for Possession of a Controlled Substance in Shawnee, Oklahoma (CF-2015-00365); a 2015 felony conviction for Possession of a Controlled Substance in Shawnee, Oklahoma (CF-2015-00487); a 2016 felony convictions for Receiving Stolen Property, Forgery, and Possession of a Firearm by a Felon in Oklahoma City, Oklahoma (CF-2015-08595); and a 2017 felony conviction for Receiving Stolen Property in Shawnee, Oklahoma (CF-2016-00609)

7.      A records check of **FRENCH**'s criminal history revealed the following felony convictions: a 2010 felony conviction for Burglary 1st Degree in Tulsa, Oklahoma (CF-2010-01433); a 2013 felony conviction for Distribution of a Controlled Substance in Tulsa, Oklahoma (CF-2013-00696); and a 2018 felony conviction for Possession of a Firearm by a Convicted felon in Tulsa, Oklahoma (CF-2018-04674). Additional records checks showed that **FRENCH** has an active warrant, issued on July 28, 2020, out of Tulsa, Oklahoma for felony robbery with a dangerous weapon.

8.      On August 10, 2020, an ATF Agent acting in an undercover capacity (UC) met with **RICHARDSON** at the Concourse Park, located at 200 Gladstone Boulevard, Kansas City, Missouri. This meeting was initiated for **RICHARDSON** to sell methamphetamine and a firearm to the agents.

9.      A UC agent called **RICHARDSON** at the telephone number of (816) 642-1643. **RICHARDSON** stated that he was coming to Concourse Park on his 4-wheeler, which he later arrived on. Previously, through a third party, **RICHARDSON** asked if a photo of the firearm was good, or if the UC wanted to see the firearm in person. The UC stated that he wanted to see the firearm in person. **RICHARDSON** asked to see the money that would pay for the firearm. The UC showed the money to the third party, who then confirmed with **RICHARDSON** that the UC had the money necessary to complete the proposed firearm transaction.

10.      After **RICHARDSON** arrived at the meeting location, **RICHARDSON** placed a motorcycle helmet on the ground next to the 4-wheeler. The UC observed a black colored pistol sitting in the helmet. This pistol was not the subject of the proposed firearm sale. **RICHARDSON** placed a call on his cellular telephone, attempting to give another individual directions to his current location in Concourse Park. **RICHARDSON** then introduced himself as "Jake" and asked the UC to walk away from the others with **RICHARDSON**. **RICHARDSON** identified himself as "jay woody" and stated that he was "UAB" (believed to be referencing to the United Aryan Brotherhood).

11.      **RICHARDSON** began asking the UC several questions. **RICHARDSON** asked if the UC had a convict number or a department of corrections number. **RICHARDSON** asked why the UC could not buy the firearm legally. The UC told **RICHARDSON** that everything that the UC did was for re-sale. **RICHARDSON** then started discussing needing a revolver.

Additionally, **RICHARDSON** started talking about knowing an individual that could also machine firearms.

12.     **RICHARDSON** asked what the UC would do with a grenade, specifically a pineapple-style grenade.  The UC inquired if the grenade was a real one.  **RICHARDSON** stated that he was in the military for eight (8) years and claimed that the grenade was real.

13.     Eventually, **RICHARDSON** reached into his left sock and pulled a bag containing methamphetamine from within his sock.  The UC noted the unusual color of the methamphetamine and called it "mexican yellow."  **RICHARDSON** claimed that the methamphetamine was "anhydrous."

14.     The UC asked where the firearm that was the subject of the agreed upon purchase was located.  **RICHARDSON** stated that it was in a "little white car."  **RICHARDSON** showed the agent a photograph of a firearm that appeared to be an assault rifle on his cellular telephone. **RICHARDSON** discussed the firearm, saying that he had shot one round through it. **RICHARDSON** stated that he would sell the firearm with only one round of ammunition.

15.     **RICHARDSON** asked if the UC smoked "pot" (marijuana).  The UC said no. **RICHARDSON** showed the UC a card with **RICHARDSON**'s full name and date of birth displayed, saying that the card was his Missouri medical marijuana card.  **RICHARDSON** said it allowed him to grow up to 36 plants that he had growing in his basement.  **RICHARDSON** admitted that he had just got out of prison.  **RICHARDSON** also stated that he had about sixteen (16) ounces of "water" (slang term for PCP).  **RICHARDSON** stated that he could supply cocaine, ecstasy, or whatever the UC wanted.

16.     **RICHARDSON** made a telephone call again, trying to direct two individuals in a white Dodge Avenger with black stripes, bearing a temporary tag, to the location.  The vehicle then pulled up to the location with **FRENCH** as the driver and a heavyset white female in the front passenger seat.  **FRENCH** exited the vehicle as the UC and **RICHARDSON** walked to the vehicle.  **FRENCH** removed a black firearm bag from the rear seat of the vehicle and placed the bag on the ground next to the vehicle.  **FRENCH** and the female departed the area a short time afterwards.

17.     The agent began examining the firearm and found that it did not appear to function. **RICHARDSON** inquired with the UC if the firearm functioned.  The UC stated that it did not. **RICHARDSON** stated that the firing pin was at his house and that **RICHARDSON** wanted to make sure that everything was "straight."  **RICHARDSON** asked if the UC wanted to go to **RICHARDSON**'s residence to get the firing pin.  The agent did go to **RICHARDSON**'s residence.

18.     The UC traveled to 406 North Oakley, Kansas City, Missouri.  Once at the residence, the UC asked for a picture of the grenade.  **RICHARDSON** showed the UC a picture of what appeared to be a World War II era grenade that had been repainted.

19.     **RICHARDSON** retrieved the firing pin from the residence and provided it to the UC, while **FRENCH** observed from a distance.  The UC and **RICHARDSON** reassembled the bolt from the firearm that was being purchased.

20.     **RICHARDSON** discussed selling methamphetamine, which he admitted to obtaining from Oklahoma.   The UC and **RICHARDSON** discussed the price of the methamphetamine and firearm.  The UC asked if **RICHARDSON** had another firearm for sale. **RICHARDSON** produced a Springfield, model XD, .40 caliber pistol and showed it to the UC. **RICHARDSON** then returned the firearm to his waistband.  The UC provided **RICHARDSON** with $2,400.00 in ATF agent cashier funds for the methamphetamine and firearm. **RICHARDSON** stated he previously did ten (10) years for having a firearm.  The UC then departed the area.

21.     An examination of the purchased firearm revealed it was an AR-type Privately Made Firearm, .223 caliber rifle bearing no serial number.  An examination of the ammunition revealed that there were twenty-nine (29) rounds of .223 caliber ammunition.  An examination of the purchased methamphetamine revealed that it weighed approximately 22 grams and field tested positive for methamphetamine.  An ATF Nexus expert examined the aforementioned ammunition and determined the ammunition is manufactured outside the state of Missouri.

22.     On August 21, 2020, a residential Search Warrant was obtained for 406 North Oakley, Kansas City, Jackson County, Missouri (20-SW-00264-JTM).  On August 26, 2020, the residential Search Warrant was executed.

23.     From **RICHARDSON**'s bedroom the following firearms were located: a Remington, model Mohawk 10, .22 caliber rifle bearing serial number 2510693; Charles Daley, model Field, 12 gauge shotgun bearing serial number 3500046; Springfield, model XD40, .40 caliber pistol bearing serial number US176521.  Additionally, a safe located in **RICHARDSON**'s bedroom was found to contain the aforementioned Springfield pistol, approximately 296 grams of methamphetamine, and **RICHARDSON**'s Missouri Driver License.

24.     A pineapple-style grenade was recovered from the residence, which was x-rayed by an ATF Certified Explosive Specialist, and found to contain gun powder.  The following items were also recovered from the residence: five (5) marijuana plants, various rounds of ammunition, and body armor.

25.     A custodial interview with **RICHARDSON** was conducted on scene.  Post-*Miranda*, **RICHARDSON** advised he had firearms in the residence.  **RICHARDSON** admitted to possessing a medical marijuana card, smoking marijuana daily, and having several marijuana

plants in the residence.  **RICHARDSON** corroborated the events involving the UC on August 10, 2020.  **RICHARDSON** stated he has brokered approximately one-hundred (100) pounds of methamphetamine over the past year.  **RICHARDSON** admitted to being a previously convicted felon and knowing that he is unable to possess firearms.

26.    A custodial interview with **FRENCH** was conducted on scene.  Post-*Miranda*, **FRENCH** admitted to being a convicted felon and not being able to possess firearms.

27.    An ATF Nexus expert examined all of the above listed firearms retrieved during the execution of the search warrant at 406 North Oakley and determined the firearms to be manufactured outside the state of Missouri.  An examination of the seized methamphetamine, approximately 196 grams, revealed that it field tested positive for methamphetamine.

28.    Based upon the evidence presented in this Affidavit, there is probable cause to believe that **Jacob Michael RICHARDSON** and **Brian Michael FRENCH**, each after having sustained prior felony convictions punishable by imprisonment of one year or more, did knowingly and intentionally possess ammunition in and affecting interstate commerce, both in violation of Title 18, United States Code, Section 922(g)(1).  Therefore, I respectfully request a criminal complaint be issued against **RICHARDSON** and **FRENCH** charging both with said violation, and a warrant for **RICHARDSON** and **FRENCH's** arrest be issued.

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Angelica K. Carpenter, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this __26th__ day of August 2020.

By telephone n

HONORABLE JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri

5